UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ONGKARUCK SRIPETCH; AMANDA FLORES; BREHNEN KNIGHT; ANDREW MCALPINE, ASHMIT PATEL; MICHAEL WEXLER; DOMINIC WILLIAMS; ADTRON INC. a/k/a STOCKPALOOZA.COM; ATG INC.; DOIT, LTD.; DOJI CAPITAL, INC.; KING MUTUAL SOLUTIONS INC.; OPTIMUS PRIME FINANCIAL INC.; ORCA BRIDGE; REDLINE INTERNATIONAL; and UAIM CORPORATION,<br><br>Defendants. | Case No.: 20-cv-01864-H-AGS<br><br>**ORDER GRANTING MOTION TO INTERVENE AND STAY THE ACTION PENDING CRIMINAL PROCEEDINGS**<br><br>[Doc. No. 49.] |

On January 6, 2021, the United States of America filed motion to intervene and stay the proceedings in the above civil action pending resolution of the parallel criminal case – United States v. Sripetch, 20-cr-160-H. (Doc. No. 49.) The Government represents that Plaintiff Securities and Exchange Commission takes no position as to the Government's

motion; Defendant Andrew McAlpine joins the Government's motion; and Defendants Ongkaruck Sripetch and Amanda Flores do not oppose the Government's motion. (Id. at 2.) On January 13, 2020, Defendant Brehnen Knight filed a response stating that he does not oppose the Government's motion. (Doc. No. 53.) For the reasons below, the Court grants the United States' motion to intervene and to stay the pending action pending criminal proceedings.

## BACKGROUND

### I. The Present Civil Action

On September 21, 2020, Plaintiff SEC initiated the present civil action against Defendants Ongkaruck Sripetch, Amanda Flores, Brehnen Knight, Andrew McAlpine, Ashmit Patel, Michael Wexler, and Dominic Williams ("the Individual Defendants") and against Defendants Adtron Inc. aka Stockpalooza.com, ATG Inc., DOIT Ltd., Doji Capital, Inc., King Mutual Solutions Inc., Optimus Prime Financial Inc., Orca Bridge, Redline International, and UAIM Corporation ("the Entity Defendants"). The SEC alleges that, from at least August 2013 through at least February 2019, the Defendants worked as a network to engage in stock "scalping" schemes to manipulate the common stock of at least 20 companies. "Scalping" is "a known practice whereby the owner of shares of a security recommends that security for investment and then immediately sells it at a profit upon the rise in the market price which follows the recommendation." SEC v. Abellan, 674 F. Supp. 2d 1213, 1219 (W.D. Wash. 2009); see Lowe v. SEC, 472 U.S. 181, 224 (1985) (White, J., concurrence) (describing "scalping" as where "a person associated with an advisory service 'purchas[es] shares of a security for his own account shortly before recommending that security for long-term investment and then immediately sell[s] the shares at a profit upon the rise in the market price following the recommendation.'" (quoting SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 181 (1963))).

In each of the alleged schemes, a subset of the Defendants would begin by obtaining stock in a certain microcap company that is thinly traded,[1] and they would usually hold that stock in the name of one of the Entity Defendants. (Doc. No. 1, Compl. ¶¶ 31-32; Doc. No. 6-1 at 2.) Next, some of the Defendants would promote the company at issue. (Id.) In most instances, a Defendant or Defendants paid an intermediary entity, which then wired the funds, minus a commission, to third-party promoters who would run promotional campaigns for the stock. (Id.) In some instances, Defendant Adtron – a company owned and controlled by Defendant Sripetch – would also conduct a promotional campaign. (Id.) Then, shortly after the beginning of the promotional campaign, Defendants would sell, or "dump," the relevant stock at inflated prices caused by the promotions. (Id.) Some of the stock allegedly involved in these schemes were VMS Rehab Systems, Inc. ("VMS") and Argues Worldwide Inc. ("ARGW"). (Doc. No. 1, Compl ¶¶ 6-7, 38, 69-99, 113-31.) Plaintiff SEC asserts that these practices mislead the public and constitute illegal "scalping" that violates certain anti-fraud provisions of the federal securities laws. (Doc. No. 6-1 at 2; Doc. No. 1, Compl. ¶ 33.)

On September 21, 2020, Plaintiff SEC filed a complaint against Defendants Sripetch, Flores, Knight, McAlpine, Patel, Wexler, Williams, Adtron, ATG, DOIT, Doji, King Mutual, Optimus Prime, Orca Bridge, Redline, and UAIM, alleging various claims for: violations of Sections 9(a) and 10(b) of the Exchange Act; violations of Sections 5(a), 5(c), and 17(a) of the Securities Act; violations of Rule 10b-5; and aiding and abetting violations of those provisions. (Doc. No. 1.) On September 22, 2020, Plaintiff SEC filed an ex parte motion for a temporary restraining order against Defendants Sripetch, Knight, Patel, and Flores. (Doc. No. 6.) On September 22, 2020, the Court granted Plaintiff's motion and entered the requested TRO. (Doc. No. 12.)

---

[1] "Microcap stocks are defined based on the market capitalization of the issuer; these stocks tend to have a share price of less than one cent." SEC v. Alpine Sec. Corp., 354 F. Supp. 3d 396, 406 (S.D.N.Y. 2018).

On October 5, 2020, the Court held an order to show cause hearing. At the hearing, the Court temporarily granted the SEC's motion for a preliminary injunction, and the Court converted the September 22, 2020 TRO into a preliminary injunction.[2] (Doc. No. 17.)

On November 2, 2020, the Court issued an order granting the SEC's motion for a preliminary injunction and granting the parties' joint request for an order modifying the preliminary injunction, and the Court issued the preliminary injunction as to Defendants Sripetch, Patel, and Flores. (Doc. Nos. 28, 29.) By the present motion, the United States of America moves: (1) to intervene in the present action; and (2) to stay the present civil action pending resolution of the criminal case United States v. Sripetch, 20-cr-160-H. (Doc. No. 49 at 1-2.)

## II. The Criminal Action

On January 8, 2020, the United States of America filed an indictment against Defendants Sripetch, Wexler, Patel, and McAlpine. United States v. Sripetch, 20-cr-160-H, Docket No. 1 (S.D. Cal., filed Jan. 8, 2020). In the indictment, Defendants are charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5. Id. Defendant Sripetch is also charged with three counts of manipulative trading in violation of 15 U.S.C. §§ 78i(a)(1) and 78ff. Id. These charges are based on allegations that Defendants Sripetch, Wexler, and McAlpine conspired to engage in a pump-and-dump stock scheme as to VMS stock and allegations that Defendant Sripetch, Wexler, and McAlpine conspired to engage in a pump-and-dump stock scheme as to ARGW stock. Id. This criminal case is currently pending before this Court.

///

///

---

[2] In its motion for a TRO, the SEC requested an asset freeze as to Defendant Knight in the amount of $687,032.27 and an accounting. (Doc. No. 6 at 1.) The Court granted this request and included that specific relief in the TRO. (Doc. No. 12.) At the October 5, 2020 order to show cause hearing, the SEC requested that the asset freeze be lifted as to Defendant Knight. (Doc. No. 17.) The Court granted the SEC's request and lifted the asset freeze as to Knight. (Id.)

# DISCUSSION

## I.  The Government's Motion to Intervene

Federal Rule of Civil Procedure 24(b)(1)(B) provides: "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact."  The Ninth Circuit has held that a district court may grant permissive intervention where the party seeking intervention "'shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 955 (9th Cir. 2009) (quoting Nw. Forest Resource Council v. Glickman, 82 F.3d 825, 839 (9th Cir. 1996)).  In addition, Rule 24(b)(3) "requires that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" Id. (quoting Fed. R. Civ. P. 24(b)(3)).

The United States has satisfied the three requirements above.  First, no independent ground for jurisdiction is needed as the United States does seek to litigate a claim in this action; rather, the United States is only seeking to intervene in the action for the limited purpose of moving for a stay.  See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) ("[A]n independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits.").  Second, the motion is timely because the civil action is still in the pleading stage with the parties having engaged in little, if any, discovery, and a trial schedule has not yet been set.  Third, the civil action and the criminal action involve common questions of law and fact as all of the defendants in the criminal action are named defendants in the civil action, and the two actions involve overlapping allegations of securities fraud based on some of the same pump-and-dump schemes, specifically the alleged schemes involving VMS Rehab and ARGW stocks. (Compare Doc. No.1, Compl. with United States v. Sripetch, 20-cr-160-H, Docket No. 1 (S.D. Cal., filed Jan. 8, 2020).)

The Court concludes, in its discretion, that the United States may intervene in this civil action to seek a stay to avoid prejudice in the criminal action. See SEC v. Giguiere, No. 18CV1530-WQH-JLB, 2018 WL 9516048, at *2 (S.D. Cal. Oct. 24, 2018) ("Courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case."); SEC v. Mazzo, No. SACV121327DOCANX, 2013 WL 12172132, at *1 (C.D. Cal. Sept. 3, 2013) ("The U.S. Attorney's ability to intervene is well established when there are parallel criminal and civil proceedings that involve common questions of law and fact."). As such, the Court grants permissive intervention to the United States for the limited purpose of seeking a stay of the civil action.

**II.    The Government's Motion to Stay**

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995). "Nevertheless, a court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem[] to require such action." Id. (internal quotation marks omitted).

"The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.'" Id. A court "should generally consider the following factors:"

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995); see Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc., 490 F.3d 718, 724 (9th Cir. 2007).

"'A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time.' Generally, stays should not be indefinite in nature." Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (citations omitted). "The proponent of a stay bears the burden of establishing its need." Clinton, 520 U.S. at 708.

The United States argues that a stay of the civil action pending resolution of the criminal action is appropriate for several reasons. First, the United States argues that the efficient use of judicial resources supports a stay of the civil action. (Doc. No. 49 at 8-10 (citing SEC v. Nicholas, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) ("[T]he civil and criminal cases are inextricably intertwined and cannot reasonably proceed independent of each other. The SEC complaint and criminal indictment concern a number of identical [allegations]. . . Given the high degree of overlap and interrelatedness of the cases, dual litigation does not serve the interests of efficiency or judicial economy. . . . Finally, collateral estoppel in the criminal case may expedite the resolution of the civil case.")).) Second, the United States argues that a stay is necessary to prevent the potential prejudice that could occur if discovery in the civil action is used to circumvent the more limited scope of discovery in the criminal action. (Doc. No. 49 at 11 (citing SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) ("'The government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.").) Third, the United States argues that a stay is appropriate to prevent one-sided discovery in the civil action due to the invocation of Fifth Amendment rights. (Doc. No. 49 at 8, 10 (citing Nicholas, 569 F. Supp. 2d at 1070 ("The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the

Defendants.")).)   See also Giguiere, 2018 WL 9516048, at *3 ("The claims of Fifth Amendment rights made by parties and witnesses in this civil case will render civil discovery complicated, costly, and one-sided.").

After considering the relevant factors and the United States' arguments, the Court, exercising its sound discretion, grants the United States' request for a stay of the civil action. See, e.g., Giguiere, 2018 WL 9516048, at *3. Nevertheless, the Court declines to stay the action pending resolution of the criminal case as that would be a stay of indefinite duration. Cf. Dependable Highway, 498 F.3d at 1066 ("Generally, stays should not be indefinite in nature."). Rather, the Court grants a six-month stay of the action without prejudice to the United States seeking a further stay of the action.

## CONCLUSION

For the reasons above, the Court grants the United States' motion to intervene in the action for the limited purposes of moving for a stay. In addition, the Court grants the United States' motion to stay. The Court stays the action pending the criminal case United States v. Sripetch, 20-cr-160-H, for six months from the date this order is filed. The stay is without prejudice to the United States requesting a further stay of the action.

**IT IS SO ORDERED.**

DATED: January 19, 2021

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT