RANDY S. GROSSMAN
Acting United States Attorney
ANDREW J. GALVIN (CA Bar No. 261925)
AARON P. ARNZEN (CA Bar No. 218272)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9721
Email: Andrew.Galvin@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ONGKARUCK SRIPETCH, AMANDA FLORES, BREHNEN KNIGHT, ANDREW McALPINE, ASHMIT PATEL, MICHAEL WEXLER, DOMINIC WILLIAMS, ADTRON INC. aka STOCKPALOOZ.COM, ATG INC., DOIT, LTD., DOJI CAPITAL, INC., KING MUTUAL SOLUTIONS INC., OPTIMUS PRIME FINANCIAL INC., ORCA BRIDGE, REDLINE INTERNATIONAL, and UAIM CORPORATION,<br><br>    Defendants. | Case No. 20-CV-1864-H-AGS<br><br>**UNITED STATES' MOTION TO STAY PROCEEDINGS**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 15A<br>Judge: Hon. Marilyn L. Huff |

COMES NOW, the UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman., Acting United States Attorney, and Andrew J. Galvin and Aaron P. Arnzen, Assistant United States Attorneys, and hereby submits its motion to further stay the proceedings in the above-captioned civil case (the "SEC Case") for an additional six months while the criminal case *United States v. Sripetch, et al.*, 20CR0160-H (the "Criminal Case")

proceeds. The requested stay of the SEC Case would not apply to the revised preliminary injunction orders or to any future matters seeking modification of the revised preliminary injunction orders.

# I.

# INTRODUCTION

On January 19, 2021, the Court signed an order granting the United States' motions to intervene and to stay the SEC Case. Doc. 54. The Court stayed the SEC Case until July 19, 2021 "without prejudice to the United States requesting a further stay of the action." Since the Court issued the order, Andrew McAlpine – one of the four defendants in the Criminal Case – pleaded guilty on May 3, 2021. Doc. 65 in 20-CR-160-H. The Court will hold a motion hearing/trial setting in the Criminal Case on July 26, 2021. Doc. 64 in 20-CR-160-H. McAlpine's sentencing hearing is currently calendared for January 10, 2022. Doc. 69 in 20-CR-160-H. The United States now requests an additional six-month stay given that the factors discussed below that previously supported a stay of the SEC Case continue to exist.

The SEC complaint and indictment in the Criminal Case both contain allegations regarding pump-and-dump securities fraud schemes involving the stock of VMS Rehab ("VMS") and Argus Worldwide Inc. ("ARGW"), allege that these schemes were carried out by the same individuals, and are based on the same evidence and witnesses. Given the factual overlap, the Court should stay the SEC Case pending the outcome of the Criminal Case.

**First**, proceeding with the SEC Case would force the defendants to choose between setting aside their Fifth Amendment rights, on the one hand, or invoking those rights but then suffering the adverse evidentiary inference such silence often carries in civil litigation. **Second**, discovery in the SEC case would likely turn into an unfair, one-sided affair if the defendants invoke their Fifth Amendment rights. These defendants could take affirmative civil discovery but stand silent when the SEC sought answers from them about their

conduct.  **Third**, without a stay, the defendants could avoid the limitations on criminal discovery by using the SEC Case to pursue wide-ranging discovery through depositions, interrogatories, and third party subpoenas.  **Fourth**, the SEC Case and Criminal Case overlap significantly in terms of charged conduct, defendants, witnesses, and evidence; the cases therefore cannot realistically proceed independent of one another. Even though the SEC Case is broader – in that it includes additional defendants and schemes not alleged in the indictment – the schemes featured prominently in the SEC Case overlap almost entirely with the indictment.  Moreover, nearly all of the entities charged in the SEC's complaint are allegedly controlled by Sripetch, who is charged in the Criminal Case.  **Finally,** staying the SEC Case (which seeks injunctions and financial relief) and allowing the Criminal Case (in which liberty interests are at stake) to proceed will therefore save the Court, and the parties, significant resources, while allowing for a full vetting of the allegations against the defendants.

## II.
## STATEMENT OF FACTS

A. <u>The Civil Case</u>

The SEC's complaint alleges that the defendants engaged in the following conduct:

**1. Scalping Schemes**

From at least August 2013 through February 2019, Defendants Sripetch and Flores (and later Knight) orchestrated illegal scalping schemes involving at least 20 microcap issuers.  The defendants would obtain shares of microcap issuers through convertible debt agreements.  Defendant Patel received shares from five of the issuers, purportedly as payment for legal services.  The defendants would then promote the stock without disclosing their plan to sell their stock and sell the stock after the price rose.  Among the issuers included in the scalping schemes were VMS and ARGW – the two issuers at the heart of the Criminal Case.  Docket No. 1, ¶¶ 31-38.

### 2. Unregistered Sales of Securities of ABBY Inc.

From at least June 2013, Defendants Sripetch and Flores controlled an issuer called ABBY Inc. that issued millions of restricted shares to entities controlled by the defendants. Without waiting for the required holding period, the defendant entities sold shares of ABBY Inc., despite the fact that there was no registration statement in effect for any of the sales. Docket No. 1, ¶¶ 100-112. (There are no allegations in the Criminal Case regarding sales of ABBY Inc. seucrities.)

### 3. Manipulative Trading of VMS Rehab

From March 2016 to June 2016, Defendants Sripetch and Knight engaged in manipulative trading that was designed to, and did, raise the price of VMS Rehab stock. On many days, the trading activity between Defendants Sripetch and Knight constituted most, if not all, of the total trading volume of VMS Rehab stock. Docket No. 1, ¶¶ 113-116.

### 4. Pump and Dump of ARGW

In 2018 and early 2019, Defendants Sripetch, Knight, Wexler, and McAlpine ran a "pump and dump" scheme involving ARGW stock. Starting in April 2018, Defendant Sripetch engaged in manipulative trading of ARGW stock in order to create the appearance of active market interest in the stock. While ARGW was the subject of a promotional campaign, Defendant Wexler issued press releases designed to further increase interest in ARGW stock. Defendant Knight sold ARGW stock and then transferred proceeds from the sales to other defendants involved in the scheme. In a later iteration of the scheme, Defendant Wexler transferred hundreds of thousands of shares of ARGW stock to Defendant McAlpine's brokerage account in the Cayman Islands. The defendants arranged for additional promotional campaigns an sold shares of ARGW stock into the market. Docket No. 1, ¶¶ 117-131.

Based on the foregoing, the SEC alleges that all defendants violated Sections 9 and 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and Sections 5 and 17 of the Securities Act of 1933. Id., ¶¶ 132-162.

B. **The Criminal Case**

A grand jury sitting in this District handed an indictment in January 2020 that overlaps significantly with the SEC Case.

The indictment in <u>United States v. Sripetch, et al.</u>, 20CR0160-H, alleges that Sripetch, Wexler, Patel conspired to pump-and-dump the stock of VMS between at least as early as September 2014 through January 2017.  The indictment also alleges that Sripetch, Wexler, and McAlpine conspired to pump-and-dump the stock of ARGW at least as early as March 2018 through March 2019.  They are alleged to have done so by the same means described in the SEC complaint.  More specifically, it was part of the conspiracy that the defendants would acquire shares of VMS and ARGW; conceal the extent of their affiliation with and control over the companies; make misrepresentations to their brokerage firms in connection with stock deposits; engage in illegal match trades; cause the companies to make misleading statements to the public; fund promotions of the stock; and sell the stock into the open market after artificially inflating the stock price.  <u>See</u> 20CR0160-H, Docket No. 1, ¶¶ 11-26.

Defendants Sripetch, Wexler, and Patel are charged with a conspiracy to commit securities fraud, in violation of 18 USC § 371, and a substantive count of securities fraud, in violation of 15 USC §§ 78j(b) and 78ff, and 17 CFR § 240.10b-5 in connection with the VMS scheme.  Defendant Sripetch is also charged with three counts of manipulative trading in connection with the VMS scheme, in violation of 15 USC §§ 78i(a)(1) and 78ff.

Defendants Sripetch, Wexler, and McAlpine are charged with a conspiracy to commit securities fraud, in violation of 18 USC § 371, and a substantive count of securities fraud, in violation of 15 USC §§ 78j(b) and 78ff, and 17 CFR § 240.10b-5 in connection with the ARGW scheme.

# III.

# ARGUMENT

**A.  Intervention Is Appropriate Under Federal Rule of Civil Procedure 24**

Under Federal Rule of Civil Procedure 24(a)(2), anyone may intervene in a case as of right in an action when the applicant "claims an interest relating to the . . . transaction which is the subject of the action" and "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless existing parties adequately protect that interest."  Alternatively, intervention may be permitted by the Court under Federal Rule of Civil Procedure 24(b)(2) "when the applicant's claim or defense and the main action have a question of law or fact in common."  Whatever the basis, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding which is anticipated or already underway that involved common questions of law or fact." Bureerong v. Uvawas, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (quoting SEC v. Mersky, No. 93-5200, 1994 U.S. Dist. LEXIS 519 *2-3 (E.D. Pa. Jan. 25, 1994)); see also SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980).

Either provision of Rule 24 supports intervention here.  Under Rule 24(a)(2), the United States does, by this motion, claim an interest relating to civil discovery in the above-captioned case.  In particular, the United States' interests include the need to prevent premature exposure of sensitive investigative information through the civil discovery process—an interest that the United States is uniquely positioned to protect. Similarly, under Rule 24(b)(2), intervention is appropriate because the SEC Case and the Criminal Case raise the same or very similar factual and legal questions.

Accordingly, this Court should grant the United States' motion to intervene.

**B.  This Court Should Stay the Above-Captioned Case in the Interests of Justice**

This Court has the inherent power to stay any action when "the interests of justice seem to require such action." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th

Cir. 1995); Landis v. North Am. Co., 299 U.S. 248, 254 (1936). The determination whether to stay a civil proceeding turns on context, and should be reached "in light of the particular circumstances and competing interests" implicated by a given case. Keating, 45 F.3d at 324 (internal quotations and citations omitted). The Court should consider the "extent to which the defendant's [F]ifth [A]mendment rights are implicated," id. (internal quotations omitted), as well as the following factors:

> (1)The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons or entities not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Id. at 325.

These factors weigh strongly in favor of a stay.

**1. The Interests of the Parties Support a Stay of the SEC Case**

Civil discovery would burden both the SEC and the defendants in the SEC Case. For example, the SEC's discovery demands would force the defendants into a Hobson's choice. The defendants could invoke their rights under the Fifth Amendment, but would suffer potentially severe consequences – a negative inference can (and often does) attach to silence in civil proceedings. See, e.g., S.E.C. v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) (affirming summary judgment in civil case based largely on defendant's invocation of his Fifth Amendment rights, even when result "may seem harsh"; citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); United States v. Solano–Godines, 120 F.3d 957, 962 (9th Cir. 1997)). To avoid an adverse inference in the civil case, the defendants would have to answer questions about precisely the same conduct for which they stand criminally charged – a result that runs up against their Fifth Amendment rights against self-

incrimination. Not staying the SEC case therefore would create substantial prejudice to the defendants.

The SEC would suffer significant prejudice, too. This is because the defendants could take advantage of the full panoply of discovery available to them under the Federal Rules of Civil Procedure, including third party subpoenas, documents requests, depositions (including expert depositions), and interrogatories. At the same time, the defendants will almost undoubtedly resist the SEC's discovery demands by, <u>inter alia</u>, asserting their Fifth Amendment rights. The defendants could therefore pursue a full range of civil discovery, but refrain from providing relevant, and even critical, information and materials to the SEC. Discovery, therefore, would fail to further the litigation in any real sense – one side (the defendants) could further their fact-finding interests, while the other side (the SEC) gets left in the dark.

**2. The Efficient Use of Judicial Resources Supports a Stay of the SEC Case**

There is no realistic possibility that the SEC case meaningfully proceeds through civil discovery before the conclusion of the criminal case. During civil discovery, each of the four criminal defendants likely will be asked by the SEC about their involvement in the alleged market manipulation schemes. But if history and experience are any indication, most or all of these civil and criminal defendants will assert their Fifth Amendment rights. Without information from those individuals closest to, and with the most knowledge about, the charged schemes – information that is critical to the SEC Case – there is little point in allowing the SEC Case to go forward.

To make matters worse, the lack of a stay will require the Court's attention. The Court will likely soon order, among other things: (1) the submission of early neutral evaluation statements; (2) an early neutral evaluation conference; (3) a case

management conference, if no resolution is reached; (4) the submission of a joint discovery plan; (4) the submission of proposed civil protective orders; and (5) the completion of fact and expert discovery. Presiding over these events would likely require substantial judicial resources, and disputes may well involve Magistrate Judge Schopler and the District Court. See S.E.C. v. Nicholas, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008) ("Civil discovery will … require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise."). All the while, and despite such judicial efforts, the litigants will simply be waiting for the culmination of the criminal proceedings before they fully attend to the critical aspects of the SEC Case.

On the other hand, criminal cases can – and often do – progress all the way through conviction or acquittal without statements by the defendants. And after conviction or acquittal, it is virtually unheard of for a civil trial to take place in a parallel SEC case. There were no follow-on civil trials, for example, in the criminal and SEC cases brought in this District in connection with Peregrine System, Inc.'s accounting fraud. There, ten individual civil defendants were named in the SEC case. (See SEC v. Gardner, et al., S.D. Cal. Case No. 04CV2002-JAH.) All of these defendants, as well as additional defendants, were criminally charged. (See U.S. v. Gardner, et al., S.D. Cal. Case No. 04CR2605-W.) The SEC case was stayed prior to discovery, and the criminal case proceeded to trial. (S.D. Cal. Case No. 04CV2002-JAH, Docket # 43). Seven of the civil defendants eventually pleaded guilty in the criminal case, two had their charges dismissed after hung juries, and the remaining defendant pleaded guilty to reduced charges. Despite these varied results, there was no civil trial as to any of the defendants in the SEC case. Instead, the parties to the SEC case resolved their cases, having sized up the evidence and witnesses in the criminal trials. Indeed, the quick resolution of SEC proceedings

after (or even before) a criminal trial is the norm, mostly because a criminal conviction usually results in collateral estoppel, and an acquittal (or hung jury) forces the SEC to rethink its settlement position.  E.g., Nicholas, 569 F.Supp.2d at 1070 ("[C]ollateral estoppel in the criminal case may expedite the resolution of the civil case."); SEC v. Offill, No. 07CV1643, 2008 U.S. Dist. LEXIS 28977, *10 (N.D. Tex. Apr. 9, 2008) ("Due to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues.") (internal citations and quotations omitted).

Further, in the unlikely event a civil trial transpires, the parties could prepare for trial and try the SEC Case in relatively short order after the criminal proceedings terminate.  See Trs. of Plummers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1140 (S.D.N.Y.) ("resolution of the Criminal Case may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action").

In sum, staying the SEC case would allow the Court to focus on the Criminal Case.  After the Criminal Case terminates, the SEC Case can proceed apace, or (as often happens) be resolved without the expenditure of significant judicial resources.

**3. A Stay will Prevent Unfair Prejudice to the Government**

A stay of the civil proceedings is appropriate to prevent the defendants in the Criminal Case from taking unfair advantage of broad civil discovery rules in the SEC Case, and thereby avoid the restrictions that would otherwise pertain to them as defendants in the Criminal Case.  "The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants." Nicholas, 569 F. Supp. 2d at 1070; see also Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir. 1962) ("A

litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The Second Circuit, informed by its long history of presiding over multi-defendant parallel SEC and criminal cases, has also recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988).  Indeed, the vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings.  See, e.g., Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 10 (D. Conn. 2002) ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); SEC v. Beacon Hill Asset Management LLC, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"); Phillip Morris Inc. v. Heinrich, 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, targets "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules").

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Civ. Proc. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. Indeed, the criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." Nicholas, 569 F. Supp. 2d at 1071–72 (citing Campbell, 307 F.2d at 487 n.12); see also Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

These concerns are applicable here. The defendants' ability to take depositions, serve interrogatories, and issue third party subpoenas, for example, would undoubtedly provide them with information not otherwise discoverable in the Criminal Case, thus enhancing their ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution.

As the government will suffer irreparable prejudice if the defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceeding, the requested stay should be granted.

**4. The Interest of the Public in the Pending Cases Support a Stay of the SEC Case.**

Advancing the Criminal Case should take precedence over the SEC Case, which seeks civil sanctions and professional bars, primarily because the Criminal

Case implicates the defendants' liberty interests. "Staying the civil case, which carries only civil sanctions and monetary penalties, is not of an equally pressing nature." Nicholas, 569 F. Supp. 2d at 1073. Additionally, this case addresses abuses in the stock market – those abuses impact the integrity of the market as a whole, and chip away at the fundamental notion that all investors enjoy a level playing field. "The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers." Nicholas, 569 F. Supp. 2d at 1072; see also United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 532 (S.D. W. Va. 2005); (interest in litigating civil case "pales in comparison to the public interest as a whole in unraveling the criminal ... scheme and punishing those responsible for that scheme."); Bureerong, 167 F.R.D. at 87 ("the interests of the Government in protecting its criminal investigation are clearly the paramount concern here"); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (stating that the "public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant").

    A stay is especially appropriate here because, as set forth above, there is an indictment filed against four of the defendants in the SEC Case for engaging in the same activities that are the subject of that lawsuit. The prosecution in this case will therefore vindicate substantially the same public interest underlying the SEC's civil action, namely preventing corporate securities fraud.

## IV.
## CONCLUSION

    For the foregoing reasons, the United States requests that this Court grant its motion to stay the above-captioned proceedings for an additional six months while

the parallel criminal case docketed at <u>United States v. Sripetch, et al.</u>, 20CR0160-H proceeds. The requested stay of the SEC Case would not apply to the revised preliminary injunction orders or to any future matters seeking modification of the revised preliminary injunction orders.

DATED: July 19, 2021

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

<u>/s/Andrew J. Galvin</u>
Andrew J. Galvin
Aaron P. Arnzen
Assistant United States Attorneys