CHRISTOPHER J. DUNNIGAN (NYS Bar No. 3054525)
Email: DUNNIGANCJ@SEC.GOV
*Appearing Pursuant to Local Civil Rule 83.3(c)(3)*
KRISTINE ZALESKAS (NYS Bar No. 2912657)
Email: ZALESKASK@SEC.GOV
*Appearing Pursuant to Local Civil Rule 83.3(c)(3)*
Securities and Exchange Commission
Division of Enforcement
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Telephone: (212) 336-0061 (Dunnigan)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**vs.**

**ONGKARUCK SRIPETCH, AMANDA FLORES, BREHNEN KNIGHT, ANDREW MCALPINE, ASHMIT PATEL, MICHAEL WEXLER, DOMINIC WILLIAMS, ADTRON INC. a/k/a STOCKPALOOZA.COM, ATG INC., DOIT, LTD., DOJI CAPITAL, INC., KING MUTUAL SOLUTIONS INC., OPTIMUS PRIME FINANCIAL INC., ORCA BRIDGE, REDLINE INTERNATIONAL, and UAIM CORPORATION,**

**Defendants.**

Case No.: Number 20-civ.-1864-H-BGS

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR REMEDIES**

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this Reply Memorandum of Points and Authorities in Support of its Motion for Remedies. (Dkt. No. 118.) For the reasons set forth below, defendant Ongkaruck Sripetch's ("Sripetch") arguments in his opposition brief (Dkt. No. 142-1) ("Def. Br.") are meritless.

**I. The SEC is Prepared to Distribute Disgorged Funds to Investors, if Feasible.**

Sripetch incorrectly suggests that the SEC must establish a process for repaying investor victims *before* the Court orders disgorgement, and that disgorgement cannot be ordered because the SEC has not yet done so. *See*, *e.g.*, Def. Br. at 8 ("[T]he SEC has not met its burden to show the requested disgorged funds will be for the benefit of harmed investors.") This argument is unavailing.

As an initial matter, in its moving papers, the SEC explicitly stated that disgorgement "could compensate investor victims." (Docket No. 118-1, pgs. 9-10.) Indeed, the SEC staff has made a preliminary determination that a distribution to defrauded investors may be feasible, if sufficient funds are collected via disgorgement, prejudgment interest, and civil penalty payments. However, the SEC is not required to submit a proposed distribution plan to the Court at this stage. *See, e.g., SEC v. Crowd Machine, Inc.*, No. 4:22-cv-76-HSG, 2023 WL 8438553, *8 (N.D. Cal. Dec. 5, 2023) (ordering disgorgement against defendants and providing "that the Commission *may* propose a plan to distribute the funds paid pursuant to this order") (emphasis added). Indeed, typically, the SEC first collects remedies such as disgorgement, prejudgment interest, and civil penalties, and thereafter determines if the amount of funds collected can realistically be distributed to individual defrauded investors. Sripetch's argument puts the cart before the horse – the SEC has no way of knowing if a distribution is feasible until it knows, *inter alia*, approximately how much money from various defendants is available to distribute.

## II. *Liu* Does Not Require the SEC to Prove that Victims Suffered Pecuniary Harm or that Disgorged Funds Will Benefit Harmed Investors.

Sripetch concedes that the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020) leaves open the question of whether disgorgement *must* be distributed to investors. (Def. Br. at 3.) However, in misplaced reliance on the Second Circuit case *SEC v. Govil*, 86 F.4th 89, 98 (2d Cir. 2023), Sripetch argues that, before obtaining disgorgement, the SEC must show that investors suffered pecuniary harm and that the disgorged funds will go to those harmed investors. This argument is meritless for several reasons.

First, the holding in *Govil* that, to order disgorgement, a district court must find that victims "suffered pecuniary harm" is an outlier decision that this Court should not follow. Binding Ninth Circuit precedent holds that, "[u]nlike … damages," disgorgement is ordered to "prevent unjust enrichment and to make securities law violations unprofitable, not to compensate victims." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1097 (9th Cir. 2010). That precedent "remain[s] binding on this Court absent reconsideration by that Court itself." *See, e.g.*, *SEC v. Jammin Java*, Case No. 2:15–cv–08921 SVW (MRWx), 2017 WL 4286180, at *4 (C.D. Cal. Sept. 14, 2017), *aff'd sub nom. SEC v. Weaver*, 773 F. App'x 354 (9th Cir. 2019) (ordering defendant to disgorge profits from pump and dump scheme). The Ninth Circuit has not reconsidered its controlling decisions, nor are they "clearly irreconcilable" with any intervening Supreme Court precedent. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*).

In reasoning that disgorgement should restore "investors" to the status quo, *Govil*, 86 F.4th at 103, derived a pecuniary harm-requirement from *Liu v. SEC*, 140 S. Ct. 1936 (2020), that the Supreme Court did not articulate itself. *Liu* held that properly ordered disgorgement falls "squarely within the heartland of equity" not because it restores *victims* to the status quo, but because it prevents "unjust enrichment" and restores the *violator* to the status quo by taking "money out of the wrongdoer's hands." 140 S. Ct. at 1942-43. This is what makes disgorgement a "profits-based," not loss-based, remedy. *Id.*

at 1944; *see also id.* at 1945 ("profits-based remed[y]"); *id.* at 1946 ("profits from wrongdoing"); *id.* at 1948 ("profits remedy"); *id.* at 1949 ("profits-focused remedy"); *id.* at 1950 ("profits-based remedy"). In multiple SEC actions, the Ninth Circuit has applied *Liu*'s "guid[ance]" on how disgorgement should be measured, apportioned, and distributed, 140 S. Ct. at 1947-50, without ever suggesting that *Liu* contains a hidden restriction that entitles wrongdoers to keep their ill-gotten gains unless their victims suffered pecuniary harm. *See, e.g.*, *SEC v. Cole*, Case No. 17-56196, 2024 WL 445335 (9th Cir. Feb. 26, 2024) (remanding to ensure compliance with *Liu*); *SEC v. Russell*, Case No. 22-55093, 2023 WL 4946603 (9th Cir. June 27, 2023); *SEC v. Liu*, Case No. 21-56090, 2022 WL 3645063 (9th Cir. 2022) (on remand); *SEC v. Premier Holding Corp.*, Case No. 21-55249, 2022 WL 541194 (9th Cir. Feb. 23, 2022); *SEC v. Yang*, Case No. 21-55437, 2022 WL 3278995 (9th Cir. Aug. 11 2022); *SEC v. Janus Spectrum LLC*, Case Nos. 17-17042, 18-15403, 2020 WL 3578077 (9th Cir. July 1, 2020); *SEC v. Yang*, 824 F. App'x 445 (9th Cir. 2020). Nor have any of these decisions required the SEC to provide a distribution plan for defrauded investors prior to seeking disgorgement. Other courts, post-*Liu*, have rejected the argument that disgorgement orders require a showing of investor "loss amounts." *See, e.g., SEC v. GenAudio*, 32 F. 4th 902, 952 (10th Cir. 2022).

*Govil* also frustrates Congress's intent to deprive wrongdoers of their ill-gotten gains from *any* violation of the securities laws. Nothing in the plain text of 15 U.S.C. § 78u(d)(5)—which authorizes equitable relief that may be "appropriate or necessary for the benefit of investors"—imposes a pecuniary harm requirement. Moreover, after *Liu*, Congress authorized disgorgement and omitted the "for the benefit of investors" language that *Liu* found to operate as an additional limitation on equitable disgorgement. *See, SEC v. Ahmed*, 72 F. 4th 379, 395-96 (2d Cir. 2023); *SEC v. Barry*, Case No. 2:15-cv-02563 DDP (MAAx), 2023 WL 4491724, at *1-2 (C.D. Cal. July 12, 2023); *SEC v. Spartan Secs. Gr., Ltd.*, 620 F. Supp. 3d 1207, 1223-24 (M.D. Fla. 2022). Courts thus have authority in "any" SEC action—not just those where pecuniary harm is established—to

order disgorgement to prevent "unjust enrichment." 15 U.S.C. §§ 78u(d)(3) and (d)(7). Congress's focus on preventing "unjust enrichment" is consistent with the equitable, controlling aim of disgorgement that wrongdoers not "profit[] from their own wrong." *Liu*, 140 S. Ct. at 1950. By authorizing disgorgement while omitting the "textual hook" that *Liu* relied on to restrict courts' equitable powers, subsection (d)(7) gives courts full equitable authority to prevent unjust enrichment as a remedy to vindicate public law. *Bartenwerfer v. Buckley*, 598 U.S. 69, 80 (2023); *see also Kansas v. Nebraska*, 574 U.S. 445, 463 (2015). Congress understands the distinction between losses and disgorgement in the securities context (*e.g.*, 15 U.S.C. §§ 78u(d)(3)(B)(iii)(bb) and 78u-4(b)(4); 11 U.S.C. § 523(a)(19)(B)(iii)), and it has not limited courts' authority to disgorge profits to cases where pecuniary harm is established.

Furthermore, contrary to Sripetch's argument, even *Govil* does not require courts to quantify the amount of pecuniary harm suffered, nor to identify the specific investors who suffered pecuniary harm. *Govil* acknowledged that disgorgement is ordered not "'to compensate victims' but 'to prevent wrongdoers from unjustly enriching themselves through violations'" and that "disgorgement aims to divest profits" of the wrongdoer. *Govil*, 86 F. 4th at 106-08. Thus, even the *Govil* decision holds that once a court finds that some victim suffered pecuniary harm because of the defendants' wrongdoing, disgorgement is measured by the violator's ill-gotten *gain*, which can be less or more than the victims' *loss*. *Govil*, 86 F. 4th at 103, n.14 (quoting *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006)); *see id.* at 107-08; *see also SEC v. iFresh, Inc.*, Case No. 22-3200, 2024 WL 416709 at *3 (E.D.N.Y. Feb. 5, 2024) (calculating disgorgement in the amount of iFresh's proceeds from its market manipulation). Accordingly, Sripetch's

contention that disgorgement must "not exceed [victims'] financial losses" (Def. Br. at 6) is meritless, even were this Court to apply *Govil* (which it should not).[1]

It is therefore appropriate for this Court to award disgorgement of $4,115,365.88—the amount Sripetch profited from his wrongdoing.

**III. Investors Suffered Pecuniary Harm from Sripetch's Misconduct.**

Even were it necessary for the SEC to demonstrate that investors suffered harm (which it is not), the evidence here demonstrates that victims suffered pecuniary harm as a result of Sripetch's wrongdoing. To be clear, Sripetch participated in pump-and-dump schemes that manipulated the price of the stocks of more than 20 issuers. Counterparties to Sripetch's trades (and those of his confederates) were thus induced to purchase stock at manipulated prices.

Specifically, the Amended Complaint contains allegations—which must be accepted as true for purposes of the SEC's motion (Dkt. No. 90-1) —that: (i) Sripetch engaged in fraudulent schemes whereby the liquidity and prices of stocks were driven upward; (ii) he engaged in manipulative trading, which raised stock prices; and (iii) investors were harmed. (Amended Complaint ¶¶ 1, 33, 36, 38, 117, 120, 124, 130.) These actions created pecuniary harm to investors who bought the stock that Sripetch was fraudulently promoting and manipulating. *See e.g.*, *iFresh, Inc.*, 2024 WL 416709, at *3 (ordering disgorgement and finding that consent judgment establishing "that iFresh's

---

[1] Sriptech incorrectly states footnote 7 of *Govil* reflects that "the SEC conceded to the Second Circuit that giving disgorged funds to the Treasury would violate *Liu.*" (Def. Br. at 9). To the contrary, the Commission agreed there was a clerical error in the judgment directing disgorgement funds to the Treasury where the Commission had represented to the district court that it would seek to distribute funds to investors. *See*, *Govil* at fn. 7.

stock prices were artificially inflated during the relevant time period" was sufficient to "establish[] the requisite pecuniary harm").

Moreover, in connection with the sentencing of Sripetch's co-defendants in a parallel criminal case, the United States Attorney's Office for the Southern District of California filed declarations analyzing victim impact statements and investor losses resulting from trading in two of the issuers that Sripetch and his co-defendants manipulated. *See, e.g.*, *United States v Sripetch et al.*, 3:20-cr-160 (S.D. Cal.), Dkt. No. 200-1 (analyzing trading losses for certain investors, including investors who provided victim impact statements, and determining that there were 34 investor accounts with losses from trading in ARGW stock for the period March 1, 2018 through July 31, 2018, 22 investor accounts with losses from trading in ARGW stock for the period August 1, 2018 through February 4, 2019, and 27 investors accounts with losses from trading in VRSYF stock for the period March 1, 2016 through January 31, 2017).

Therefore, the notion that the SEC cannot identify victims who suffered pecuniary harm is wholly without merit.

**IV. Sripetch Has Failed to Establish Any Legitimate Business Expenses.**

As set out in the SEC's moving brief, the SEC's disgorgement calculation of $4,115,365.12 is supported by the Declaration of SEC Fraud Analyst Ricky Tong, which identifies: (i) the sources of financial records used in the SEC's analysis; (ii) sums received by Sripetch; and (iii) identifiable deductions such as cost-basis in shares and expenses for which Sripetch should be given credit. (Tong Decl. ¶¶ 3-4.) Sripetch argues that the disgorgement should be only $1,942,418.32, but he fails to carry his burden to refute the SEC's reasonable approximation. *See Platforms Wireless Int'l Corp.*, 617 F. 3d at 1096 (once the SEC makes a showing that its disgorgement figures reasonably approximate the amount of unjust enrichment, the burden shifts to the defendant to demonstrate that the disgorgement figure was not a reasonable approximation) (internal quotation marks omitted).

First, while Sripetch asserts in a declaration that he reported only $3,275,200.08 in "gross profits" on his personal tax returns from 2013 through 2019 (Sripetch Decl. ¶ 5), he fails to provide his actual tax returns or any other documentation to support this assertion. This lack of visibility into his tax returns is compounded by Sripetch's failure to explain why his tax returns purportedly show a lower "profit" than the SEC's analysis, which is based on an analysis of financial records from more than 30 financial institutions. It is Sripetch's burden to explain this discrepancy, and he has not attempted to do so. *See Platforms Wireless Int'l Corp.*, 617 F. 3d at 1096.

Second, Sripetch deducts from his "gross profit" figure both $1,023,276.92 in expenses, *and* $309,504.68 for the cost basis of the relevant stocks. (Sripetch Decl. ¶ 5.) However, his $3,275,200.08 gross profit figure should presumably have already reflected the deduction of any cost basis. *See SEC v. Retail Pro., Inc.*, 673 F. 1108, 1109 (S.D. Cal. 2009) (gross profit is proceeds of sales minus the cost of goods sold). Sripetch's analysis would appear to have the Court assume that he paid taxes on income from stock sales without deducting the cost-basis of the stock, although it is not possible to say for certain given the lack of visibility into his tax returns that are the purported basis for his analysis.

Third, Sripetch claims $1,023,276.92 in "expenses" related to his stock trading. However, he fails to explain what these expenses were or to provide any documentation to substantiate his assertion. In order to subtract purported business expenses from a disgorgement calculation, a defendant must prove that such "purported business expenses were actually incurred or were 'legitimate.'" *Premier Holding Corp.*, 2022 WL 541194 at *1. Sripetch does not even attempt to describe what these expenses are, nor does he offer an explanation of any legitimate business that he or the entities he controlled were engaged in. If, for example, these expenses are the sums Sripetch illegally paid to promote stocks as alleged in the Amended Complaint (Docket No. 87, ¶¶ 2, 3, 32-33, 38), such expenses would not be properly deductible for purposes of disgorgement. *See Liu*, 140 S. Ct. at 1945 ("when the entire profit of a business or undertaking results from the

wrongful activity ... the defendant will not be allowed to diminish the show of profits by putting in . . . inequitable deductions") (internal citations omitted).

Ultimately, the burden is on Sripetch to justify his calculation of the expenses he incurred and their legitimacy. As the Ninth Circuit has noted, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Platforms Inter. Wireless Corp*., 617 F. 3d at 1096 (internal citation omitted); *see also, SEC v. mUrgent Corp*., Case No. 11-cv.0626 DOC(SSx), 2012 WL 630219 (C.D. Cal., Feb. 28, 2012) ("Courts have created this burden-shifting system because defendants are more likely to have access to relevant evidence, and 'the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.'"); *SEC v. Davis*, Case No. 18-18481, 2021 U.S. Dist. LEXIS 247625, at *5 (C.D. Cal. Dec. 21, 2021) (applying this standard post-*Liu*). Here, Sripetch has failed to meet his burden with respect to the funds he received or the expenses he incurred, or to otherwise show facts in the record that "demonstrate the unreasonableness of the SEC's disgorgement request." *SEC v. CMKM Diamonds*, 729 F. 3d 1248, 1261-62 (9th Cir. 2013). Accordingly, the Court should reject his alternative disgorgement calculation.

**CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion for final judgment against Sripetch, imposing $4,115,365.88 in disgorgement and $1,708,437.26 in prejudgment interest.

March 7, 2023

Respectfully Submitted,

/s/ Christopher J. Dunnigan___________
Christopher J. Dunnigan
Kristine Zaleskas
Securities and Exchange Commission
Division of Enforcement
New York Regional Office
100 Pearl Street, Suite 20-100
New York NY 1004-2616
T: (212) 336-0061 (Dunnigan)

# CERTIFICATE OF SERVICE

I, Christopher J. Dunnigan, an employee of U.S. Securities and Exchange Commission, located at 100 Pearl Street, Suite 20-100, New York, NY 10004-2616, declare under penalty of perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On March 7, 2024, I served the foregoing document, described as **Plaintiff Securities and Exchange Commission's Reply Memorandum of Points and Authorities in Support of its Motion for Remedies,** on all defendants by either:

[X] **BY MAIL:** I caused such envelope(s) to be sent by UPS or International Federal Express.

[X] **BY E-MAIL:** I caused a copy to be transmitted electronically by filing the foregoing with the clerk of the District Court using its ECF system, which electronically notifies counsel for that party, or by directly emailing counsel who have not yet appeared in this matter.

[ ] **BY PERSONAL SERVICE:** I personally delivered the document listed above to the persons at the address set forth below.

[ ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 7, 2024, at Ridgewood, New Jersey.

/s/ *Christopher J. Dunnigan*
Christopher J. Dunnigan

**SERVICE LIST**

By ECF: Ongkaruck Sripetch
Andrew McAlpine
Michael Wexler

By Mail: Adtron Inc. a/k/a Stockpalooza.com
ATG Inc.
Ashmit Patel

By email:
to Counsel: Brehnen Knight